# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS LLC;<br><br>    Plaintiffs,<br><br>v.<br><br>1-800-FLOWERS.COM, INC.; and 800-FLOWERS, INC.,<br><br>    Defendants. | CIVIL ACTION NO: _____<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiffs Edible Arrangements LLC and Edible, IP LLC (collectively the "Edible Plaintiffs") have valuable intellectual property including trademarks that distinguish their famous cut fruit products designed to look like flowers. Defendants 1-800-Flowers.com, Inc and 800-Flowers, Inc. (collectively the "18F Defendants") have repeatedly infringed on those trademarks in internet advertising in a deliberate attempt to confuse the public and damage the Edible Plaintiffs' businesses. ██████████████████████████████████

██████████████████████████   ████████████████████████

1824558.1

█████████████████████████████████████████████

████████ This complaint seeks redress for these wrongs.

## Parties

1.

Plaintiff Edible IP, LLC is a Connecticut limited liability company whose member is Edible Brands, LLC, a Delaware Company.  Edible IP's principal place of business is in Fulton County, Georgia at 980 Hammond Drive, Atlanta GA 30328.  Edible IP owns all of the trademarks, trade names, common law intellectual property, and other goodwill associated with the brand "Edible Arrangements."  As discussed in more detail below, Edible IP licenses this property to Edible Arrangements LLC and other entities that conduct business using that name.

2.

Plaintiff Edible Arrangements LLC is a Delaware limited liability company with a principal place of business at 980 Hammond Drive, Atlanta, Georgia 30328.

3.

Defendant 1-800-Flowers.com, Inc. is a Delaware Corporation with its principle place of business at One Old County Road, Carle Place, New York 11514.

4.

Defendant 800-Flowers, Inc. is a New York corporation with its principle place of business at One Old Country Road, Carle Place, New York 11514.

5.

Certain subsidiaries of 1-800-Flowers.com are registered to do business in Georgia, including Flowerama of America, Inc. ("Flowerama"). On information and belief, the 18F Defendants conduct business in Georgia through Flowerama, and they can be served by serving Flowerama's registered agent, C T Corporation System, 289 S Culver St, Lawrenceville, GA, 30046-4805.

**Jurisdiction and Venue**

6.

This Court has jurisdiction over this action under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1367.

7.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because Plaintiffs assert claims of trademark infringement, false designation of origin, and dilution arising under 15 U.S.C. §§1114, 1125(a), and 1125(c).

8.

This Court has supplemental jurisdiction over the claims in this complaint that arise under the laws of the State of Georgia pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal law claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

9.

This Court has personal jurisdiction over Edible IP, LLC and Edible Arrangements, LLC because by virtue of the filing of this Complaint, they consent to its jurisdiction.

10.

1-800-Flowers.com, Inc. and 800-Flowers, Inc. are subject to personal jurisdiction in this district because they advertise, solicit clients, and conduct continuous, systemic, and routine business in the state of Georgia and within this district, subjecting them to personal jurisdiction in this district.

11.

Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), (c) and (d) because Plaintiffs are headquartered in this district and suffered damage here. Defendants regularly engage in business in this judicial district, have

registered agents here, and their contacts are sufficient to subject them to personal jurisdiction here.

## Edible Arrangements Background

### 12.

Edible Arrangements LLC is the successful franchisor of stores offering fresh-cut fruit products, and it is best known for its artistically-designed fresh fruit products evocative of floral designs and its dipped fruit products.  These highly-regarded products are available through an extensive network of franchises throughout the United States and abroad, and through its website, its call center, the Internet, and a handful of affiliate-owned stores.

### 13.

Edible IP, LLC is the owner and licensor of, among other things, the various trademarks, trade dress, domain names, copyrights, and other intellectual property used and associated with the famous EDIBLE ARRANGEMENTS business and brand, as set forth in greater detail below.  Edible IP, LLC licenses these intellectual property assets to Edible Arrangements, LLC for use and sublicensing through Edible Arrangements, LLC's franchise system and websites.

14.

Tariq Farid founded Edible Arrangements in what has become a famous American success story.  Mr. Farid emigrated from Pakistan when he was twelve years old.  Beginning when he was only sixteen, Mr. Farid purchased his first flower shop.  Within several years he grew his business to four locations.

15.

Then came his entrepreneurial breakthrough: Mr. Farid developed a unique marketing program of providing floral arrangements made from fresh cut fruit instead of flowers.  The fresh fruit is cut and sculpted to look like floral designs.

16.

In 1999, Mr. Farid opened the first "Edible Arrangements®" store, through which he introduced his unique cut fruit products.

17.

The Edible Arrangements brand and business grew enormously.  Two years after opening his first store, Mr. Farid introduced Edible Arrangements franchises. And only three years after launching the first franchise, Entrepreneur Magazine recognized Edible Arrangements in the top 500 franchises in the United States.

18.

By 2006, there were 500 Edible Arrangements franchises, and by 2011 there were 1,000.  Today, there are almost 1,200 Edible Arrangements stores worldwide, with more than 1,100 stores located throughout the United States.  In Georgia alone, there are 42 locations.  In 2017, there were almost 175,000 Edible Arrangements deliveries in Georgia, and 215,000 Edible Arrangements customers live here.

19.

Edible Arrangements' success has been continuously recognized by the business media.  For example, Edible Arrangements ranked 9th on the 2011 Forbes list of top "franchises to start"; was named one of the "Top 100 Internet Retailers" by Internet Retailer magazine; was 38th on Entrepreneur Magazine's 2017 Entrepreneur Franchise 500; and was ranked 3rd on Inc. Magazine's list of top food and beverage companies.  Most recently, the Franchise Times ranked Edible Arrangements number 128 in the list of the "Top 200 Franchises."

20.

Today, Edible Arrangements' system-wide revenue exceeds half a billion dollars annually.  Edible Arrangements' success is a direct result of its

commitment to providing a consistently high-quality and beautifully-designed product that consumers recognize as Edible Arrangements, as well as its marketing and promotion of the famous EDIBLE ARRANGEMENTS trademark and brand.

21.

Edible Arrangement's franchisees share in the commitment to consistently deliver high-quality, beautifully designed products to consumers that are instantly recognizable as an Edible Arrangements product offered under the famous EDIBLE ARRANGEMENTS trademarks and brand.

22.

Any consumer misperception or confusion as to the affiliation of Edible Arrangements or its products with competitors or their products will irreparably damage Plaintiffs' valuable brand and goodwill, as well as that of the franchisees, who devote significant personal resources to running their shops.

**Edible IP's Trademarks**

23.

Edible IP owns a stable of extremely well-known marks that the public uses to identify and distinguish Edible Arrangements' goods in the marketplace.

24.

Of significant importance to Plaintiffs and the Edible Arrangements'

franchise network is a family of trademarks and service marks comprising or

containing the terms EDIBLE or EDIBLE ARRANGEMENTS, either alone or

with other words and/or designs (collectively, the "EDIBLE Marks"), which serve

as the banner of quality that identifies and distinguishes Edible Arrangements'

goods and services in the marketplace.

25.

Primary among these EDIBLE Marks are the famous trade names,

trademarks, and service marks "EDIBLE" (the "EDIBLE Mark") and "EDIBLE

ARRANGEMENTS" (the "EDIBLE ARRANGEMENTS Mark").

26.

The EDIBLE Mark, covered by Registration No. 4,319,940, is incontestable

pursuant to the provisions of the Federal Trademark Act of 1946, as amended, 15

U.S.C. § 1051 *et seq.* (the "Lanham Act"), as is the EDIBLE Mark and Logo, Reg.

No. 5513739, appearing below:



27.

The EDIBLE ARRANGEMENTS Mark, covered by Registration Nos. 2,934,715 and 3,844,160, among others, is also incontestable pursuant to the provisions of Lanham Act, as is the EDIBLE ARRANGEMENTS Mark and Logo, Reg. Nos. 3,141,566 and 3,844,161, appearing below:



28.

The EDIBLE Marks, including EDIBLE, the EDIBLE logo, EDIBLE ARRANGEMENTS and the EDIBLE ARRANGEMENTS Mark and Logo, are broadly recognized by the general consuming public as identifying Edible Arrangements and its products and services. Edible Arrangements' branding is widely suffused with references to and displays of these famous marks.

29.

For example, the EDIBLE Marks are used as the trade name of every Edible Arrangements store and franchise. Each such store features signage and various in-store and point-of-purchase displays of the EDIBLE Marks, including on

coolers, counters, and other décor.  Franchisees at the stores wear clothing that displays EDIBLE Marks to reinforce consumer perception that all the goods and services through the stores emanate from Edible Arrangements.

30.

Additionally, the Edible Arrangements products sold and delivered to many millions of consumers annually all bear the EDIBLE Marks on packaging, boxes, and other associated containers and sales documents, such as invoices and delivery notices.

31.

Likewise, the familiar refrigerated delivery vehicles that deliver these products to consumers and circulate daily throughout the United States proudly display the EDIBLE Marks prominently along their sides.

32.

Edible Arrangements' marketing materials, brochures, catalogs, coupons, and sell sheets all likewise feature the EDIBLE Marks as a designation of source. Edible Arrangements advertises across all important media—television, radio, print, internet, digital, e-commerce, and social media, for example—and invariably emphasizes the EDIBLE Marks in those advertisements.

33.

Edible Arrangements franchisees also use promotional merchandise, such as jackets, shirts, t-shirts, hats, and store signage, that further display and promote the EDIBLE Marks.

34.

The cumulative effect of this comprehensive promotion of the EDIBLE Marks is that consumers —whether purchasers, shoppers, recipients, or even viewers of advertising or refrigerated delivery vehicles—are constantly informed that the EDIBLE Marks designate the source of the Edible Arrangements products that circulate regularly through United States commerce.

35.

The EDIBLE Marks are inherently distinctive.  They imaginatively combine the normally disparate notions of flower arrangements, which are displayed for their visual appeal and not eaten, and cut fruit, typically served as food.

36.

By virtue of this extensive usage in connection with so many highly regarded products and services, the EDIBLE Marks have become widely known to

the general consuming public of the United States, have acquired significant secondary meaning, and represent goodwill of enormous value.

37.

Indeed, consumer research demonstrates powerful brand recognition for the EDIBLE Marks.

38.

The EDIBLE Marks are famous, as it is widely recognized by the general consuming public of the United States as a designation of source of the goods and services of Edible Arrangements, and it became famous well before Defendants' unlawful activities complained of herein.

**The 18F Defendants**

39.

Defendant 1-800-Flowers.com and its subsidiaries, including but not limited to those doing business as Harry and David, Shari's Berries, and FruitBouquets.com, are floral and gift retailers, best known as a delivery service for flowers and related gifts. 1-800-Flowers.com holds itself out to the public on its websites and in its communications with the public as "the world's leading florist and gift shop."

40.

On information and belief, 800-Flowers, Inc. provides services and takes actions on behalf of 1-800-Flowers.com (and its affiliates), including for example, offline and online advertising (including search engine "keyword" advertising) and website development and maintenance.

41.

1-800-Flowers.com utilizes a network of independent entities to fulfill orders.

42.

The 18F Defendants and their subsidiaries entered into the market for cut fruit arrangements and have continued and expanded their cut fruit arrangement product line, selling and promoting products directly on their websites and through their distribution network of independent florists and franchisees/licensees.

43.

In doing so, the 18F Defendants embarked on a campaign to intentionally imitate and infringe the EDIBLE Marks and confuse consumers into believing that 1-800-Flowers.com and its goods and network of Distributors are somehow

associated with or approved by Edible Arrangements, which campaign has

escalated and continues to steadily escalate.

44.



45.

46.



47.

48.



**Defendants Infringing Use and** █████████████████████████

49.

On their websites, Defendants sell fresh and chocolate-dipped fruit, the same type of goods covered by the EDIBLE Marks and sold by Edible Arrangements and its franchisees.

50.

Google LLC ("Google") operates the world's largest internet search engine,

which consumers access by visiting www.google.com.  Through the Google site,

one can search for a particular company, product, or service, or for a type of

company product or service, by entering a query using keywords (or search terms).

Google then generates a results list based upon the keywords.  Google's results list

includes links to websites, ordered in descending relevance to the keywords

entered.

51.

The results screen also includes context-based advertising, triggered by the

keywords entered.  Through the Google Adwords program, a retailer selects

keywords that it expects a consumer might enter in a search query when looking

for the types of goods or services that the retailer offers, including either broad

categories or exact words or phrases.  When those keywords are entered, the

retailer's advertisement and a link to its website appears on the searcher's results

page.  Retailers may specify that these advertisements are shown only in specific

geographic areas or regions.

52.

Other search engines, such as Microsoft's Bing, provide similar "keyword"

advertising programs.

53.

Upon information and belief, the 18F Defendants have selected the EDIBLE Marks as a keyword that would trigger advertisements of its brands. Additionally, Defendants inserted the EDIBLE Marks, and the confusingly similar mark "Edible Fruit Arrangements," in the body of its search engine advertisements as a description of the goods offered, with the deliberate intention of directing consumers and business away from Edible Arrangements.

54.

When a consumer enters the EDIBLE Marks as a search term, Defendants infringing ads and links to the related websites appear on the results page.

55.

The use of these terms in Defendants' advertisements ████████ ████████████████████████████████████████ and has caused actual confusion for Edible Arrangements' customers leading to multiple instances where consumers have contacted Edible Arrangements believing that they had received goods and services from Edible Arrangements, when in fact they had done business with the 18F Defendants (and received unsatisfactory results). This has occurred in multiple geographic areas such as Alabama and Nebraska.

56.

For example, in March 2020, Alicia Henrichs, an owner of three Edible Arrangements franchises in Lincoln and Omaha, Nebraska, began receiving daily phone calls, from multiple customers, seeking to order products listed on the website for FruitBouquets.com.

57.

Upon information and belief, after searching for "Edible Arrangements" on an internet search engine, these customers were presented with a sponsored advertisement for FruitBouquets.com.  After learning that FruitBouquets.com did not deliver in the Lincoln and Omaha, Nebraska regions, these customers sought out the telephone number of Ms. Henrichs's stores.

58.

Upon information and belief, these customers believed that they were on the Edible Arrangements website, when in fact they were on a website created by the 18F Defendants.  Their calls to the Edible Arrangements stores demonstrated this confusion.

59.

Plaintiffs have not consented to or acquiesced in Defendants' use of the EDIBLE Marks, the confusingly similar mark "Edible Fruit Arrangements," or any

other confusing practice.

60.

In fact, on July 31, 2019, Plaintiffs demanded that Defendants cease using the Marks.

61.

Plaintiffs' use of the Edible Marks has been continuous and exclusive since long before Defendants' first use of the Infringing Marks.  The EDIBLE Marks are also distinctive and became famous long before Defendants' first use of the Infringing Marks.

62.

Through its unauthorized use of the Infringing Marks, Defendants intended to and have directed consumers and business away from Plaintiffs.  Defendants also have and continue to dilute the distinctiveness of the EDIBLE Marks.

63.

Defendants' pattern of infringing conduct and repeated, blatant disregard for Plaintiffs' trademark rights establishes that Defendants use of the Infringing Marks is deliberate and willful for the purpose of misleading and confusing the public

about its association with Edible Arrangements, and to trade on the goodwill,

reputation, and name of Edible Arrangements and its brand.

## **Count I**

## **Trademark Infringement (Pursuant to 15 U.S.C. § 1114(1)(A))**

64.

Plaintiffs incorporate and re-allege the above paragraphs 1 through 63 as if

fully alleged herein.

65.

Despite Plaintiffs' well-known prior rights in the EDIBLE Marks,

Defendants have, without Plaintiffs' consent, used and continue to use in

commerce the EDIBLE Marks, or counterfeits, copies, reproductions, or colorable

imitations therefor, in connection with the sale, offering for sale, distribution, and

advertising of Defendants' goods and services.

66.

Defendants' actions constitute willful infringement of Plaintiffs' exclusive

rights in the EDIBLE Marks in violation of 15 U.S.C. § 1114.

67.

Defendants' use of the EDIBLE Marks, counterfeits, copies, reproductions, or colorable imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendants' goods and services.

68.

As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable EDIBLE Marks.  Unless Defendants are restrained from further infringement of the EDIBLE Marks, Plaintiffs will continue to be irreparably harmed.

69.

Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' conduct is allowed to continue.

## Count II

## False Designation of Origin or Sponsorship and Unfair Competition

## (Pursuant to 15 U.S.C. §1125(a))

70.

Plaintiffs incorporate and re-allege the above paragraphs 1 through 69 as if fully alleged herein.

71.

Defendants have knowingly used and continue to use the EDIBLE Marks in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the goods and services that the Defendant advertises, promotes, and sells.  Defendants' actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

72.

Defendants' use of the EDIBLE Marks as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant and Plaintiff and/or Defendants' goods and services and Plaintiffs' goods and services, and is likely to

cause such people to believe in error that Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs or that the Defendants are in some way affiliated with Plaintiffs.

73.

Defendants' acts constitute false designations of the origin and/or sponsorship of Defendants' goods and unfair competition in violation of 15 U.S.C. § 1125(a).

74.

As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered irreparable harm to the valuable EDIBLE Marks.  Unless Defendant is restrained from further infringement of the EDIBLE Marks, Plaintiffs will continue to be irreparably harmed.

75.

Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' conduct is allowed to continue.

## Count III

## Trademark Dilution (Pursuant to 15 U.S.C. § 1125(c))

76.

Plaintiffs incorporate and re-allege the above paragraphs 1 through 75 as if fully alleged herein.

77.

The EDIBLE Marks have become famous in the United States and worldwide as a result of its inherent and/or acquired distinctiveness, the duration and extent of their use, the geographical extent of the trading area for these marks, their channels of trade, their degree of recognition, and the extent of their registration.  The EDIBLE Marks were famous and distinctive prior to any use of the Infringing Marks by Defendants.

78.

Because the Edible Arrangements goods and services have gained a reputation for superior quality, the EDIBLE Marks have gained substantial renown.

79.

Defendants have used and continue to use in commerce the EDIBLE Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the advertisement, promotion, and sale of Defendants' products.

80.

Defendants' use of the EDIBLE Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, is likely to cause, has caused, and continues to cause irreparable injury to and dilution of the distinctive quality of the EDIBLE Marks in violation of Plaintiffs' rights under 15 U.S.C. § 1125(c). Defendants' wrongful use of the EDIBLE Marks is likely to cause dilution by blurring, tarnishment, and whittling away the distinctiveness of the famous EDIBLE Marks.

81.

Defendants have used and continue to use in commerce the EDIBLE Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, willfully and with the intent to dilute the EDIBLE Marks, and with the intent to trade on the reputation and goodwill of Plaintiffs.

82.

As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable EDIBLE Marks.  Unless Defendant is restrained from further infringement of the EDIBLE Marks, Plaintiffs will continue to be irreparably harmed.

83.

Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' conduct is allowed to continue.

## **COUNT IV**

## **Fraudulent Use of Trademark (Ga. Code Ann. § 23-2-55)**

84.

Plaintiffs repeat and reallege the allegations in Counterclaim paragraphs 1 through 83 above as though set forth fully herein.

85.

The 18F Defendants use of the the EDIBLE Marks and the confusingly similar mark "Edible Fruit Arrangements"  constitutes an encroachment upon

Edible IP and Edible Arrangements' businesses by the use of similar trademarks, names, and devices.

86.

The probable tendency and effect of the 18F Defendants' use of the the EDIBLE Marks and the confusingly similar mark "Edible Fruit Arrangements" is to deceive the public so as to pass off the goods or business of Edible Arrangements.

87.

The 18F Defendants intended to deceive and mislead the public by their use of the Edible Marks.

88.

The 18F Defendants' use of the the EDIBLE Marks and the confusingly similar mark "Edible Fruit Arrangements" has caused, and will continue to cause, irreparable injury to the value of Plaintiffs' businesses, and the goodwill in and reputation of Edible Arrangements and Edible IP's marks.  Plaintiffs will continue to suffer irreparable injury unless the 18F Defendants' misconduct is enjoined.

89.

The 18F Defendants' use of the Edible Marks and the confusingly similar mark "Edible Fruit Arrangements" is a fraud for which ManpowerGroup is entitled to equitable relief.

## COUNT V

## Common Law Unfair Competition

90.

Plaintiffs repeat and reallege the allegations in paragraphs 1through 89 above as though set forth fully herein.

91.

The 18F Defendants' actions described above constitute common law unfair competition under the common law of Georgia.

92.

The 18F Defendants' actions described above are deliberate and willful.

93.

As a result of the 18F Defendants' actions, Plaintiffs have suffered damages in an amount to be determined at trial.

94.

The 18F Defendants' misconduct has caused, and will continue to cause, irreparable injury to the value of Plaintiffs' businesses, and the goodwill and reputation associated with Edible Arrangements and Edible IP's valuable Marks. Plaintiffs will continue to suffer irreparable injury unless the 18F Defendants' misconduct is enjoined.

## Count VI

### Deceptive Trade Practices (In Violation of O.C.G.A. § 10-1-370 *et seq.*)

95.

Plaintiffs incorporate and re-allege the above paragraphs 1 through 94 as if fully alleged herein.

96.

The EDIBLE Marks are inherently distinctive of Edible Arrangements' goods and services, and enjoy significant goodwill and secondary meaning in the marketplace.

97.

The 18F Defendants' use of the EDIBLE Marks in advertising and promotional materials constitutes a deceptive trade practice in violation of the Georgia Uniform Deceptive Trade Practices Act because such use causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the parties' goods and/or services.

98.

The 18F Defendants' use of the EDIBLE Marks in advertising and promotional materials also constitutes a deceptive trade practice in violation of the Georgia Uniform Deceptive Trade Practices Act because such use causes a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with or certification by Edible IP or Edible Arrangements.

99.

The 18F Defendants' deceptive trade practices have caused, and will continue to cause, irreparable injury to the value of Edible Arrangements' business and reputation and Edible IP's goodwill and value housed in its Marks. Plaintiffs will continue to suffer irreparable injury unless the 18F Defendants' misconduct is enjoined.

100.

As a result of the 18F Defendants' deceptive trade practices, Plaintiffs have

suffered damages in an amount to be determined at trial.

101.

Plaintiffs are entitled to recover their costs and attorneys' fees because the

18F Defendants have willfully engaged in deceptive trade practices.

## **Count VII**



102.

103.

104.



105.

106.

107.



108.

109.

**Prayer for Relief**

**WHEREFORE**, Plaintiffs respectfully request an order and judgment against Defendants as follows:

1. A permanent injunction against Defendants enjoining them and their subsidiaries, partners, officers, agents, servants, employees, attorneys, and all those acting in concert with Defendant, (1) from using the Edible Marks or any colorable imitation thereof in any keyword advertising; (2) from using the Edible Marks or any colorable imitation thereof in any advertisement; (3) from doing any act or thing likely to confuse or deceive consumers into believing that there is some connection between Edible

Arrangements or Edible IP and the 18F Defendants or their products; and (4)

███████████████████████████████████████████████.

2. That Defendants be directed to file with the Court and serve upon Plaintiffs, within thirty days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraph 1, above, pursuant to 15 U.S.C. § 1116(a);

3. That Defendants be directed to account for and pay to Plaintiffs their profits resulting from their unlawful acts in an amount to be determined at trial;

4. That Plaintiffs recover all of the damages caused by Defendants' wrongful conduct in an amount to be determined at trial;

5. That Defendants be directed to pay to the Plaintiffs their attorneys' fees pursuant to 15 U.S.C. § 1117;

6. That Defendants be directed to pay to the Plaintiffs their attorneys' fees pursuant to O.C.G.A. § 13-6-11;

7. That Defendants be required to pay any punitive damages, including treble damages, as permitted by all applicable laws;

8. That Defendants be required to pay the Plaintiffs the costs of this action and interest pursuant to applicable law; and

9.  That the Plaintiffs be granted such other relief in law or in equity as this

Court deems just and proper.

### **Jury Demand**

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 4th day of June, 2020.


/s/Jason J. Carter_____
Jason J. Carter
Ga. Bar No. 141669
Solesse L. Altman
Ga. Bar No. 442827
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA  30309-3417
404-881-4100
carter@bmelaw.com
altman@bmelaw.com

*Attorneys for Plaintiffs*